UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

AMANDA SCHAEFER, individually and
on behalf of others similarly situated

        Plaintiff,

v.                                        Case No: 2:15-cv-444-FtM-38CM

SEATTLE SERVICE BUREAU, INC.
and STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

        Defendants.
_____/

## ORDER[1]

This matter comes before the Court on Defendant, Seattle Service Bureau, Inc. d/b/a National Service Bureau's (NSB) Motion to Dismiss or in the alternative Motion for Judgment on the Pleadings (Doc. #3) filed on July 27, 2015. The Plaintiff Amanda Schaefer filed her Response in Opposition (Doc. #26) on August 20, 2015. The Motion to Dismiss is now fully briefed and ripe for the Court's review.

## BACKGROUND

On July 12, 2013, Schaefer was involved in an auto accident in Fort Myers, Florida. The vehicle struck by Schaefer was damaged and there was also a claim for bodily injuries. The other vehicle and driver were insured by State Farm, Schaefer was driving

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

without liability insurance. Schaefer received a citation from the Florida Highway Patrol (FHP) for her role in the accident. State Farm paid the claim submitted by its insured.

After State Farm paid the insured's damages, it subrogated the damages claim and referred the matter to NSB to collect the alleged damages amount from Schaefer. On January 6, 2015, NSB sent Schaefer a demand letter seeking to collect a debt in the amount of $21,366.90. NSB identified itself as a debt collector attempting to collect on the claim.

On April 6, 2015, NSB sent a second letter to Schaefer informing her that it had sent a letter to Florida authorities requesting that her driver's license and car registration tag be suspended due to the outstanding debt. At the time the letters were sent from NSB, no judgment had been entered against Schaefer by NSB or State Farm.

As a result of NSB's collection attempts, Schaefer filed a six (6) count Complaint on behalf of herself and all persons similarly situated against State Farm and NSB in the Circuit Court for the Twentieth Judicial Circuit in and for Lee County, Florida. The Complaint alleges as follows: Count I, alleges NSB violated Fla. Stat. § 559.72(9) Florida Consumer Credit Protection Act (FCCPA); Count II, alleges a violation for FCCPA Fla. Stat. § 559.72(10); Count III, requests injunctive relief; Count IV, declaratory relief; and Count V, alleges a violation of Fla. Stat. § 501.24 Florida Deceptive Unfair Trade Practices Act (FDUTPA); and Count VI, alleges unjust enrichment.

On July 23, 2015, State Farm removed the Complaint to this Court under the Class Action Fairness Act (CAFA). Schaefer moved to remand but the remand was denied. NSB now moves the Court to dismiss the Complaint or in the alternative for judgment on the pleadings.

## **STANDARD OF REVIEW**

In deciding a motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiffs. Christopher v Harbury, 536 U.S. 403, 406, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002). However, dismissal for failure to state a claim upon which relief may be granted does not require appearance, beyond a doubt. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561- 563, S. Ct. 127 S. Ct. 1955, 167 L. Ed 2d 929 (2007) (aboragating Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement" to relief requires more than labels, conclusions, and a formulaic recitation of the cause of actions elements. Bell Atlantic, 550 U.S. 544, 561- 563.

To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. Id. at 555; Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). Although the pleading standard announced in Fed R. Civ. P. 8 does not require "detailed factual allegations," it does demand more than an unadorned, "the-defendant-unlawfully-harmed-me accusation." Sinaltrainal v. Coca-Cola Co., 578 F. 3d 1252, 1268 (11th Cir. 2009) (citing Ascroft v. Iqbal, ----- U.S.----, 129 S. Ct. 1937, 1949, 173 L. Ed 2d 868 (2009). Furthermore, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of the allegations. Sinaltrainal, 578 F. 3d at 1268 (citing Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005)). The facts as pled must state a claim for relief that is

plausible on its face. Sinaltrainal, 578 F. 3d at 1268 (citing Iqbal, 129 S. Ct. at 1950). Dismissal is warranted under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief. Simplexgrinnell, L.P. v. Ghiran, 2007 WL 2480352 (M.D. Fla. August 29, 2007) (citing Neitzke v. Williams, 490 U.S. 319, 326, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); Brown v. Crawford County, Georgia, 960 F.2d 1002, 1009-1010 (11th Cir. 1992).

Federal Rule of Civil Procedure No. 12(c) permits a party to move for judgment on the pleadings. In evaluating a motion for judgment on the pleadings, a court will accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party. Maxum Indem. Co. v. Florida Const. Servs., Inc., 59 F. Supp. 3d 1382, 1384-85 (M.D. Fla. 2014) (citing Cunningham v. Dist. Attorney's Office for Escambia County, 592 F.3d 1237, 1255 (11th Cir.2010). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." Id.

## DISCUSSION

NSB contends the subrogated claim is not a debt as defined by the Fla. Stat. § 559.72(9) and (10) FCCPA.  Therefore, Counts I and II filed pursuant to the FCCPA should be dismissed.  NSB also argues that Schaefer has no standing to file a claim pursuant to FDUPTA.  Schaefer responds that the statue's terms are ambiguous and that this is a case of first impression in Florida and should not be dismissed.

(1)  *Whether the Subrogated Claim is a Debt Under the FCCPA, Counts I and II*

Schaeffer alleges that Defendants violated §§ 559.72(9) and/or (10) of the FCCPA, which provide:

> (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.
>
> (10) Use a communication that simulates in any manner legal or judicial process or that gives the appearance of being authorized, issued, or approved by a government, governmental agency, or attorney at law, when it is not.

Fla. Stat. 559.72(9) and (10).

NSB argues that the debt in this case is not a consumer debt that falls under the FCCPA but a subrogated debt. NSB argues that the FCCPA defines consumer debt the same as the FDCPA, and therefore, NSB contends that by applying the Eleventh Circuit's analysis under the FDCPA to Schaefer's FCCPA claims, Counts I and II should be dismissed.

The FDCPA is a strict liability statute, the purpose of which is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. The Eleventh Circuit, in Oppenheim v. I.C. System, Inc., 627 F.3d 833, 836–37 (11th Cir.2010), held that "[t]o recover under both the FDCPA and the FCCPA (a Florida state analogue to the federal FDCPA), a plaintiff must make a threshold showing that the money being collected qualifies as a 'debt.'" In the FDCPA and the FCCPA, "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of

the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment. 15 U.S.C. § 1692a(5); Fla. Stat. § 559.55(1). Accordingly, the Oppenheim court held that "the FDCPA and FCCPA apply only to payment obligations of a (1) *consumer* debt arising out of a (2) *transaction* in which the money, property, insurance, or services at issue are (3) *primarily for personal, family, or household purposes.* Elmore v. Ne. Florida Credit Bureau, Inc., No. 3:10-CV-573-J-37JBT, 2011 WL 4480419, at *1 (M.D. Fla. Sept. 27, 2011) (emphasis in original). The statute thus makes clear that a mere obligation to pay does not constitute 'debt' under the FDCPA." Oppenheim, 627 F.3d at 837 (emphasis in original).

This appears to be a case of first impression in Florida, therefore, the Court will look to how courts have applied the FDCPA to the same issues. The FCCPA speaks directly to the issue by noting that great weight should be given to the federal courts and Federal Trade Commission's interpretations of the FDCPA when applying the FCCPA. The FCCPA provides in pertinent part:

> (5) In applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.

Fla. Stat. § 559.55(5). Therefore, the Court will apply the rulings from the Eleventh Circuit and Middle District of Florida regarding the FDCPA to its analysis of the FCCPA.

NSB relies on Hawthorne v. MAC Adjustment, Inc., 140 F. 3d 1367 (11th Cir. 1998), for its position that a debt arising from a subrogation claim is not a consumer debt under the FCCPA. Hawthorne, like the instant case involved the collection of a subrogation debt of an unpaid insurance claim. Hawthorne was involved in an accident, allegedly resulting from her negligence. Liberty Mutual Insurance Company ("Liberty

6

Mutual") insured the other party to the accident, who was damaged in the amount of $2,020.18. After paying its insured's claim, Liberty Mutual then provided Mac Adjustment with subrogation rights to the $2,020.18 it claimed Hawthorne owed. On June 5, 1996, Mac Adjustment sent Hawthorne a letter requesting payment of the subrogation claim incurred by Liberty Mutual. Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1369 (11th Cir. 1998).

In Hawthorne, the Eleventh Circuit noted that the existence of a debt is the threshold question under the Fair Debt Collection Practices Act (FDCPA). 140 F. 3d at 1371. The FDCPA defines "debt," in turn, as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to a judgment." 15 U.S.C. § 1692a(5). Although we recently held that a "debt" need not require the extension of credit, Brown, 119 F.3d at 922, we have not previously addressed the limits of the FDCPA's definition of "debt." Hawthorne, 140 F. 3d at 1371.

The Hawthorne Court held that by the plain terms of the statute, not all obligations to pay are considered "debts" subject to the FDCPA. Id. (citing Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1324 (7th Cir.1997)). Rather, the FDCPA may be triggered only when an obligation to pay arises out of a specified "transaction." A fundamental canon of statutory construction directs us to interpret words according to their ordinary meaning. Hawthorne, 140 F. 3d at 1371; Anderson v. Singletary, 111 F.3d 801, 804 (11th Cir.1997) (citing Perrin v. United States, 444 U.S. 37, 42, 100 S. Ct. 311, 314, 62 L. Ed. 2d 199 (1979)). The ordinary meaning of "transaction"

necessarily implies some type of business dealing between parties. *See* Webster's New Collegiate Dictionary 1230 (1979) (defining "transaction" as "a business deal"); Bass, 111 F.3d at 1325 (citing Webster's New World Dictionary 1509 (2d ed. 1986)). In other words, when we speak of "transactions," we refer to consensual or contractual arrangements, not damage obligations thrust upon one as a result of no more than her own negligence. Hawthorne, 140 F. 3d at 1371 (citing Bass, 111 F.3d at 1326 ("[T]he FDCPA limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services.")). While we do not hold that every consensual or business dealing constitutes a "transaction" triggering application of the FDCPA (such a holding would be contrary to the plain language of the statute limiting applicability to specified transactions, as well as to other portions of the statute not relevant to this analysis, which require the existence of other conditions before the FDCPA applies), at a minimum, a "transaction" under the FDCPA must involve some kind of business dealing or other consensual obligation. Hawthorne, 140 F. 3d at 1371

The Eleventh Circuit concluded that since Hawthorne's alleged obligation to pay Mac Adjustment for damages arising out of an accident did not arise out of any consensual or business dealing, plainly it did not constitute a "transaction" under the FDCPA. Moreover, the fact that Mac Adjustment may have entered into a contract with the insurer for subrogation rights did not change the fact that no contract, business, or consensual arrangement between Hawthorne and the damaged party, its insurer, or Mac Adjustment existed. Consequently, the Hawthorne Court found the FDCPA did not apply to the debt because the debt did not arise out of a transaction.

Schaefer argues that the term transaction is ambiguous because Webster's Dictionary provides multiple definitions for the term. As such, Schaefer argues the Eleventh Circuit's definitions for the FDCPA found in Hawthorne cannot be applied to the FCCPA as the term transaction is ambiguous. While it is true, neither the FDCPA nor the FCCPA define transaction, the Eleventh Circuit has held that the term transaction is not ambiguous in this regard. Hawthorne, 140 F. 3d at 1371. The Hawthorne Court defined transactions as follows: "when we speak of 'transactions,' we refer to consensual or contractual arrangements, not damage obligations thrust upon one as a result of no more than her own negligence." Id. (citing Bass, 111 F.3d at 1326). Therefore, applying the Eleventh Circuit's definition to this case, the term transaction is not found to be ambiguous.

Applying the Hawthorne Court's rationale to the case at hand, the Court finds Schaefer did not enter into a transaction with State Farm nor NSB for any business purposes. Instead, Schaefer, like Hawthorne, was an uninsured motorist who crashed into State Farm's insured which resulted in the damages. Schaefer was ticketed by FHP for her negligence in causing the accident. State Farm paid out $21,366.90 to its insured for damages and subrogated that claim. The claim was then handed over to NSB for collection.

Thus, Schaefer's debt arose out of a tort created by her own negligence and not a transaction which would have created a consumer debt as required by the FCCPA. *See* Antoine v. State Farm Mut. Auto. Ins. Co., 662 F. Supp. 2d 1318, 1326 (M.D. Fla. 2009) (citing Fuller v. Becker & Poliakoff, P.A., 192 F.Supp.2d 1361, 1367 (M.D.Fla.2002) (dismissing similar action because the debt did not result from a transaction, that is, a

business dealing or some other consensual obligation, but from tortious conduct [motor vehicle accident] and so does not constitute a consumer transaction).  Accordingly, the Court finds—applying Hawthorne—that Schaefer's claim does not fall under the protections established by the FCCPA because there was no transaction and no consumer debt. Thus, the Motion to Dismiss Counts I and II is due to be granted.

### (2) Injunctive Relief Count III

Schaefer moves the Court to enjoin the Defendant from further violating the FCCPA.  Since the Court found that the FCCPA was not violated by the Defendant's actions, Count III is moot and due to be dismissed.

### (3) Declaratory Relief Count IV

Schaefer moves the Court for declaratory relief to declare certain of NSB's practices to be unlawful in violation of the FCCPA.  Since the Court found that the neither State Farm nor NSB has violated the FCCPA, Schaefer's claim for declaratory relief is moot and due to be denied.

### (4) Unfair and Deceptive Trade Practices Act Count V

NSB states that Schaefer lacks standing to bring a claim under the FDUPTA because Schaefer is not a consumer as defined under the Act.  Schaefer argues the Court should read FDUPTA as providing protection for individuals involved in non-consumer transactions at least where they involve practices of anti-competitive conduct affecting the consuming public. See Beacon Property Management, Inc. v. PNR, Inc., 890 So. 2d 274, 277-78 (Fla. 4th DCA 2010).  In Beacon, the Florida Fourth Circuit Court of Appeals applied FDUPTA to any act occurring "in the conduct of any trade or commerce" e.s. even between purely commercial interests. Id. at 278.  Schaefer argues that the language used

by the Fourth DCA "any act in trade or commerce" should apply to NSB's attempts to collect on State Farm's subrogated debt. Schaefer's argument is not well taken.

The Beacon Court applied FDUPTA to business entities in which the defendant, PNR, was the consumer of leasing services and the plaintiff, Beacon acted as the supplier of those services. However, the owner and landlord of the property rented by PNR was a company named Ocean One. PNR entered into a lease with Ocean One for the office space. Id. As such there was no consumer transaction between Beacon and PNR. Even though there was no consumer transaction between PNR and Beacon, the Fourth DCA held that FDUPTA applied to the case because Beacon had assumed the conduct of the contractual duty from Ocean One because Beacon was responsible for the upkeep of the property. Id.

In this case, Schaefer is not involved in a business relationship with NSB like Beacon and PNR were whereby Beacon was performing a service for PNR. Instead, the debt allegedly incurred by Schaefer was the result of her own negligence by driving her vehicle without insurance and subsequently causing an accident with State Farm's insured. As such, the Beacon decision is not applicable to the circumstances in this case because this case arises from the Plaintiff's own tortious conduct.

Having found that Beacon is inapplicable to this case, the Court now looks to the terms of FDUPTA and applies them to facts at hand. FDUPTA is a Florida statute that protects consumers "from the illegal and/or unscrupulous practices of debt collectors and other person." Schauer v. General Motors Acceptance Corp., 819 So.2d 809, 811–12 (Fla. 4th DCA 2002) (citation omitted); Fla. Stat. § 501.202. In order to properly state a claim pursuant to FDUPTA, a plaintiff must allege a deceptive act or unfair practice,

causation, and actual damages. Scantland v. Jeffry Knight, Inc., No. 8:09–CV–1985–T–17TBM, 2010 WL 4117683, at *7 (M.D. Fla. Sept.29, 2010). A deceptive act or unfair practice may be found when "there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." Blair v. Wachovia Mortg. Corp., No. 5:11–cv–566–Oc–37TBS, 2012 WL 868878 *1 (M.D. Fla. Mar.14, 2012) (citing Sundance Apartments I, Inc. v. General Elec. Capital Corp., 581 F.Supp.2d 1215, 1220 (S.D.Fla.2008) (quoting Beacon Prop. Mgmt., Inc., 842 So.2d 773, 777 (Fla.2003)); *see also* Scantland, 2010 WL 4117683 at *8 ("A deceptive practice is one that is likely to mislead consumers, and an unfair practice is one [that] offends established published policy, 'or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.' ") (quoting Rollins, Inc. v. Butland, 950 So.2d 850, 869 (Fla. 2d DCA 2006)).

Even in light of Beacon, there is a "trade or commerce" component in FDUPTA claims that must also be satisfied. Economakis v. Butler & Hosch, P.A., No. 2:13-CV-832-FTM-38DN, 2014 WL 820623, at *2-3 (M.D. Fla. Mar. 3, 2014); Kelly v. Palmer, Reifler, & Associates, P.A., 681 F.Supp.2d 1356, 1374 (S.D.Fla.2010) ("FDUPTA prohibits unfair or deceptive acts or practices 'in the conduct of any trade or commerce.' "); Fla. Stat. § 501.204(1)). This "trade or commerce" component is defined as "the advertising, soliciting, providing, offering, or disturbing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Economakis, 2014 WL 820623, at *2-3 (citing Kelly, 681 F.Supp.2d at 1374 (quoting Fla. Stat. § 501.203(8)).

Courts have found that a plaintiff's "attempt to include pre-suit demand letters within the scope of the term 'trade or commerce' simply misses the mark." Economakis, 2014 WL 820623, at *2-3 (quoting Kelly, 681 F.Supp.2d at 1376); *see also* Trent v. Mortgage Electronic Registration Systems, Inc., 618 F.Supp.2d 1356, 1365 n. 12 (M.D.Fla.2007) ("The MERS communicated pre-suit with plaintiffs that it was a 'creditor' or 'owned' the debt does not fall within the purview of 'trade or commerce.' "); See also Acosta v. James A. Gustino, P.A., No. 6:11–cv–1266–Orl–31GHK, 2012 WL 4052245, at *1 (M.D. Fla. Sept.13, 2012) (finding that the defendants were not engaged in "trade or commerce" because "attempt[ing] to collect a debt by exercising one's legal remedies does not constitute 'advertising, soliciting, providing, offering, or distributing' as those terms are used in Fla. Stat. § 501.203(8)"). Courts have also held that "[a] person is not engaged in trade or commerce merely by the exercise of contractual or legal remedies." Economakis, 2014 WL 820623, at *2-3 (citing Begelfer v. Najarian, 381 Mass. 177, 191, 409 N.E.2d 167 (1980)); Acosta, 2012 WL 4052245, at *1. Courts have even found that allegations of fabricating false documents or presenting false or misleading documents for use in foreclosures cases have been deemed not to be "trade or commerce" in the context of FDUPTA. Economakis, 2014 WL 820623, at *2-3 (citing State, Office of Att'y Gen. v. Shapiro & Fishman, LLP, 59 So.3d 353 (Fla. 4th DCA 2011)).

Here, Schaefer's Complaint does not rise to the level of a FDUPTA claim. While Schafer argues that NSB violated FDUPTA by sending letters regarding the alleged subrogated debt, there is no evidence of any trade or commerce between Schaefer and NSB or State Farm. Instead, NSB sent letters attempting to collect on the alleged subrogated debt which arose from a tort committed by Schaefer. Letters sent by

13

collection agencies to the debtor do not arise to the level of trade and commerce as defined by FDUPTA. Acosta, 2012 WL 4052245, at *1. The purpose of the FDUPTA was to protect consumers from illegal and/or unscrupulous practices of debt collectors not to provide a safe harbor or weapon to be used in response to one's own tortious conduct. As such, Count V for violating FDUPTA is due to be dismissed.

### (5)   Unjust Enrichment Count VI

Schaefer's unjust enrichment claim states that to the extent that any member of the putative class has paid the claim, NSB or State Farm has been unjustly enriched because of NSB's unlawful conduct.  Schaefer argues that given the alleged unjust collection practices any payment to NSB or State Farm would be inequitable.  NSB argues that if the FCCPA and the FDUPTA claim are denied then the unjust enrichment claim must also be denied since it is directly tied to those statutes being violated.

A claim for unjust enrichment must satisfy four essential elements: (1) the plaintiff must confer a benefit upon the defendant; (2) the defendant must have knowledge of the benefit; (3) the defendant accepts and retains the benefit; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof. State Farm Mut. Auto. Ins. Co. v. Physicians Grp. of Sarasota, L.L.C., 9 F. Supp. 3d 1303, 1311-12 (M.D. Fla. 2014) (citing Jackson–Jester v. Aziz, 48 So.3d 88, 90 (Fla. 2d DCA 2010)).

In this instance, the putative class is made up of individuals that were involved in auto-accidents where State Farm insured the injured party.  The insured's claim was paid by State Farm and the claim was turned over to NSB to pursue the subrogated debt.  As noted above, neither the FCCPA nor FDUPTA apply to the facts of this case.  Since the

putative plaintiffs were the cause of the initial debt, they did not confer a benefit on the Defendant but rather caused a debt to be incurred by the defendant. Consequently, there is no claim for unjust enrichment and Count VI is due to be dismissed.

## CONCLUSION

Based upon the terms of the FCCPA and FDUPTA no set of facts or circumstances set forth by Schaefer in her Complaint can state a claim for which relief may be granted. Schaefer cannot establish under the FCCPA or FDUPTA that a transaction or consumer debt existed between herself, the putative class members, and/or State Farm and NSB. Since Schaefer's case arose out of her negligent behavior rather than a transaction, consumer debt, trade, or commerce, she fails to satisfy the requirements of the statutes at issue in this case. Consequently, Schaefer's Complaint is due to be dismissed with prejudice.

Accordingly, it is now **ORDERED**:

Defendant, Seattle Service Bureau, Inc. d/b/a National Service Bureau's (NSB) Motion to Dismiss or in the alternative Motion for Judgment on the Pleadings (Doc. #3) is **GRANTED**.

1) The Plaintiff Amanda Schaefer's Complaint is hereby **DISMISSED with prejudice**.
2) The Clerk is directed to terminate any pending motions, close this case, and enter judgment accordingly.

**DONE** and **ORDERED** in Fort Myers, Florida this 15th day of December, 2015.

*[signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record